CITY OF PATERSON, RESPONDENT, v. CHARLES S. GALL, APPELLANT.

Argued November 19, 1914—Decided June 14, 1915.

Fees received by the clerk to the board of aldermen of the city of Paterson for issuing marriage licenses under section 5 of "An act concerning marriages" (*Pamph. L.* 1912, *p.* 306) belong to the clerk and not to the city.

---

On appeal from the Circuit Court.

For the appellant, *J. W. DeYoe.*

For the respondent, *Edward F. Merrey.*

The opinion of the court was delivered by

GARRISON, J. This action was brought by the city of Paterson against Charles S. Gall, clerk to the board of aldermen, to recover fees received by him for furnishing to various persons copies of certain records in his possession as registrar of vital statistics. The defendant by his answer admitted the receipt from sundry persons of the fee of one dollar each for issuing licenses to marry as authorized by the act of March 27th, 1912. *Pamph. L., p.* 306. While these fees are not those mentioned in the complaint the issue that was tried and decided was the right of the defendant to retain these fees. Judgment was rendered for the city and the defendant appeals.

Since 1907 the appellant has been clerk to the board of aldermen of the city of Paterson and registrar. of vital statistics at a salary fixed by ordinance as required by section 15 of the city charter, which provides that "Any fees paid to any officer for any service required of him by this act or by any ordinance of the board of aldermen shall immediately on the receipt thereof be paid into the city treasury." *Pamph. L.* 1871, *p.* 1814.

The issuing of marriage licenses was clearly not a service that was so required since it was performed under "An act concerning marriages" passed in 1910 and revised in 1912 (*Pamph. L.* 1912, *p.* 306), each of which acts by its fifth section provides that "For issuing such licenses he (the registrar) shall be entitled to receive from the applicant the sum of one dollar."

It being patent that under the city charter the registrar is not required to turn these fees into the city treasury, it is clear that unless required so to do by the Act of 1912 or its supplement in 1913 (*Pamph. L., p.* 368), the registrar is entitled to retain them for the services rendered by him under the Marriage act. A question of statutory construction is therefore presented as was the case in *Passaic* v. *Slater,* 85 *N. J. L.* 621, which case is, however, in all other respects the exact antithesis of the present one.

In that case the question was whether or not a county clerk was required to pay over to the county the fees received by him in naturalization cases for services performed. under an act of congress. Having first decided that the federal act could not control the construction of our state statute concerning the fees of salaried county officers (*Comp. Stat., p.* 4643), we then proceeded to construe that statute which provided that fees of whatever kind which by law a county clerk may receive for any official service should be received by him as public money belonging to the county and be paid over as such.

Naturalization fees being clearly fees that were received by law for an official service, it was held that under the ex-

press provision of this statute they should be paid over to the county.

The present case, as has been said, is the direct antithesis of the case cited. Here the statute under which the salary of the clerk was fixed, *i. e.*, the city charter, instead of requiring that "fees of whatever kind" should be paid to the city, expressly defines the fees so to be paid as those "received for services required by the city charter or an ordinance of the board of aldermen."

The maxim *"expressio unius est exclusio alterius"* excludes from this category any fees not answering to the express statutory description.

The statutory provision as to salary in lieu of all fees which was the basis of the decision in Passaic *v.* Slater is therefore wholly wanting in the present case where the statute is to exactly the contrary effect. In this state of the statutory law the legislature, by the acts of 1910 and 1912, expressly provided that for the issuing of a marriage license the registrar should be "entitled to receive from the applicant the sum of one dollar." If this clear statement be not taken to be an unequivocal declaration of the legislative intent we have but to turn to the fourteenth section of the same act to see just what the legislature meant by the expression "shall be entitled to receive." Section 14 provides for the transmission by mail by the registrar of certain certificates and licenses for each of which he "shall be entitled to receive from the proper disbursing officer of the city the sum of twenty cents." Inasmuch as the money the registrar is thus "entitled to receive" is clearly to be retained by him for the service rendered under the act, the same form of words will, by a familiar canon of construction, be given the same meaning in the fifth section.

These controlling considerations as to the legislative intent expressed in the statute are not opposed by even an intimation of a contrary intent or a suggestion that somebody other than the registrar is entitled to the fees for his services or who that somebody is.

The supplement of 1913 (*p.* 368), of which mention has been made, provides that in cities of the first class the fees for issuing marriage licenses shall be paid into the city treasury for the relief of the poor.   This statute is without application saving as the apparent necessity for its enactment reinforces the construction we have placed upon the unsupplemented act.   Under this construction the judgment of the court below should have been in favor of the defendant.

The case was tried without a jury by the Circuit Court whose finding as recited in its judgment was that the plaintiff was indebted to the defendant in the sum of $884.25 for salary and transmission fees on his cross-action and that the defendant was indebted to the plaintiff in the sum of $4,341 for the marriage fees we have been considering.   Judgment was therefore rendered in favor of the plaintiff for $3,450.75.

So much of this finding as relates to the license fees being erroneous the judgment in favor of the respondent must be reversed and the Circuit Court directed to enter judgment final in favor of the defendant for $884.25, with costs.

*For affirmance*—BLACK, WILLIAMS, JJ.   2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, KALISCH, VREDENBURGH, WHITE, HEPPENHEIMER, JJ.   11.